UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| INDIA HOUSE, INC., et al<br>Plaintiffs,<br><br>v.<br><br>KEVIN MCALEENAN, Acting<br>Secretary, U.S. Dept. of Homeland<br>Security,[1] et al<br>Defendants | C.A. No. 1:19-cv-296-MSM-PAS |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Santosh Shanbhag (Mr. Shanbhag or Petitioner), a foreign national, is a 2009 graduate of Johnson & Wales University ("JWU"), located in Providence, Rhode Island. Mr. Shanbhag, armed with his Bachelor's of Science in Hospitality Management degree, went to work for India House, Inc., a restaurant corporation also located in Providence. At some point, he became a restaurant manager for one

---

[1] In the government's submissions, Chad Wolf, Acting Secretary, is now named in the caption in place of Kevin McAleenan, the previous Acting Secretary, U.S. Dept. of Homeland Security. (ECF No. 19.) *See* Fed. R. Civ. P. 25(d) (automatic substitution of officials).

of India House's Indian-cuisine restaurants.[2] Mr. Shanbhag was able to work as a foreign national because, in 2013, he had been granted what is referred to as an "H-1B visa." In conjunction with his visa, an H-4 spousal visa was issued to his wife, Meenal V. Shanbhag.[3]

The H-1B visa program was created by the Immigration and Nationality Act of 1990 ("Act"). At the same time, the Act capped the issuance of these visas at 65,000 per fiscal year. 8 U.S.C. § 1101(a)(15)(H)(i)(b). At various times, the cap was increased to as high as 195,000, but in 2004 it was reduced back to 65,000 and remains there today. Emily C. Callan, *Is the Games Still Worth the Candle (or the Visa)?*, 80 Alb. L. Rev. 335, 338-39 (2016-17). The purpose of the H-1B visa is to

---

[2] India House operates three Rhode Island restaurants – Kabob 'N Curry in Providence, Rasa in East Greenwich, and Chaska, a newly opened third restaurant in Cranston. It also operates Indian Accent catering, which provides 5,000 meals weekly at Brown University as well as meals at the Rhode Island School of Design and local schools. (ECF No. 15 Administrative Record ("AR") 110-111.) According to the Petition filed with USCIS, there is a fourth affiliated restaurant, Rasoi, in Pawtucket. (ECF 14-1 AR 110.)

[3] The Act allows "the alien spouse and minor children of any such alien" receiving an H-1B visa to accompany the visa holder; thus, Ms. Shanbhag's H-4 visa is attendant to her husband's. When his right to remain and work in the United States expired, hers did as well. While the principal – in this case Santosh Shanbhag – is granted a stay to continue to reside lawfully in this country while this appeal is pending, no automatic stay accrued to Ms. Shanbhag. She, therefore, left the country immediately with their United States citizen child in order to avoid overstaying her (now expired) visa. Overstaying causes long-term adverse effects: a person who overstays by more than 180 days is denied re-entry for three (3) years; overstaying by more than one (1) year precludes re-entry for ten (10) years. 8 U.S.C.A. § 1182(a)(9)(b)(1). Ms. Shanbhag's immediate return to India was therefore designed to avoid accruing overstay days.

permit American employers to hire foreign nationals who possess particular skills in what are termed "specialty occupations."

The H-1B visa allows a foreign national, once the employer has jumped through a number of "hoops" resulting in its issuance, to work for the particular employer who has sponsored him/her for a period of three (3) years. After that time, extensions in three-year increments may be obtained. The visa, although issued in the name of a particular individual, really "travels" with the job and the employer; the visa-holder may not, for example, change employers and continue to work on the visa issued for his or her predecessor employer. As will be apparent later, it is the *position* that qualifies for and is in real respect issued the visa, not the person filling the position.

While the southern border as an immigration route into the United States has received the bulk of public attention in recent years, the landscape of the H-1B visa has not gone unchanged. According to a 2019 article in Forbes Magazine,[4] citing numbers from the USCIS H-1B Employer Data Hub, denial rates have jumped dramatically since 2015.[5] During that period, neither the law nor the guidelines have changed; the plaintiffs argue that the only reasonable inference from static legal criteria but drastically diminishing issuance numbers is a hostility of the present administration to immigration generally. (ECF No. 13-2 at 1-3.)

---

[4] Anderson, Stuart, "New Data Show H-1B Denial Rates Reaching Highest Levels," Forbes (Apr. 10, 2019).

[5] Forbes reported overall denial rates of 6% in FY 2015, 10% in FY 2016, 13% in F&Y 2017, 24% in FY 2018 and 32% in the first quarter of FY 2019.

3

The situation has worsened for the plaintiff in particular. In 2013, he was granted his first H-1B visa. In 2016, that visa was extended for three years. In 2019, however, notwithstanding a promotion to General Operations Manager, a more responsible position involving oversight of the entire India House suite of endeavors, requiring greater skills and carrying a higher salary, he and India House were denied an H-1B visa, and it is that denial that prompted this lawsuit.

Whether general hostility to immigration informs the action of the government here, as the plaintiffs contend, is largely irrelevant to this Court's decision. My review, in this Administrative Procedures Act ("APA") appeal is limited to a determination of whether the Administrative Appeals Unit ("AAU")[6] of the United States Department of Citizenship & Immigration Service ("USCIS") abused its discretion in upholding the denial that was initially adjudicated by the agency. The Court conducts a record review in this case and, for that reason, the issues are particularly amenable to summary judgment. Having considered the cross-motions of the parties, the memoranda filed with their various exhibits, and having heard oral argument, I DENY summary judgment to the defendants and GRANT summary judgment to the plaintiffs. I also ORDER the defendants to issue an H-1B visa to the plaintiff, Santosh Shanbhag, as well as a corresponding H-4 visa to his wife, Meneel Shanbhag. In addition, I direct that no overstay days shall

---

[6] The visa was denied by the United States Citizenship and Immigration Services, a unit of Homeland Security on June 29, 2018. (ECF No. 15 AR 24-31.) The denial was then certified to the AAU. That appeal was denied (ECF No. 15 AR 3-10), and it is the latter denial, as the "final agency action" that I review. *Herrera v. U.S. Citizenship and Immigr. Serv.,* 571 F.3d 881, 885 (9th Cir. 2009).

accrue to either Mr. or Ms. Santosh as a result of the initial denial of visas in this case.

## Standard of Review

The Court reviews the March 21, 2019, AAO decision with deference given to the agency's findings. *Royal Siam Corp. v. Chertoff,* 484 F.3d 139, 145-46 (1st Cir. 2007). Its denial of H-1B status can be faulted only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Defensor v. Meissner,* 201 F.3d 384, 386 (5th Cir. 2000).

## The Visa Criteria

The H-1B visa is available to a foreign national "coming temporarily to the United States to perform services … in a specialty occupation described in section 1184(i)(1) or as a fashion model, who meets the requirements for the occupation specified in section 1184(i)(2) of this title or, in the case of a fashion model, is of distinguished merit and ability, …." 8 U.S.C. § 1101(a)(15)(H)(i)(b). In turn, 8 U.S.C. § 1184(i)(1) defines "specialty occupation" as

> an occupation that requires –
>
> (A) theoretical and practical application of a body of highly specialized knowledge, and
>
> (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

Thus the employer, who bears the burden of proof when petitioning on behalf of a specific prospective employee, must show that (1) the field at issue is one of highly specialized knowledge and (2) because of that specialization, it requires a bachelor's

5

or higher degree in that specific specialty. These criteria are amplified by regulation, 8 CFR § 214.2(h)(4)(iii)(A), that set forth four bases, *any one of which* can be shown to meet § 1184(i)(1)'s definition of "specialty occupation":

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
> (3) The employer normally requires a degree or its equivalent for the position; or
>
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

*Royal Siam Corp. v. Chertoff*, 484 at 146. These bases overlap. *Id.* at 145.

### The Administrative Appeal Decision (AAO)

To meet its burden of showing that a position is a "specialty" one, a petitioner may prove any *one* of the regulation's four bases. The AAO, however, in upholding the denial, must conclude that *none* of the above were proven. In a nutshell, however, as applied to this case, these different formulations boil down to one question: when it comes to the occupation at issue here, is it a specialized occupation for which a "specific" degree is required either by custom in the field or because of the duties of the job? The AAO said, "No." (ECF No. 14-1 AR 4.)

In rejecting the plaintiff's attempt to meet the first criterion of the regulations – that a specific bachelors is required for the position –, the AAO relied

6

almost entirely on the U.S. Department of Labor's (DOL) *Occupational Outlook Handbook* ("Handbook" or "OOH")[7] as an authoritative source "on the duties and educational requirements of the wide variety of occupations that it addresses." *Id.* at 5-6. Both parties concurred that the appropriate code to examine is Standard Occupational Classification ("SOC") 11-1021, General and Operations Manager, listed under the category Top Executives. (ECF No. 14-1, AR 5; ECF No. 13-2 at 21, Plaintiff's Memorandum; ECF No. 16 at 10, Defendants' Response.) The AAO cited the Handbook's assertion that persons in this occupation have a wide variety of backgrounds and that "some individuals may be able to substitute work experience for education." (ECF 14-1 AR 6.) Further, it noted the Handbook's statement that "many [persons in this occupational category] possess a bachelor's degree in business administration," in concluding that the degree required, if any, is a "general-purpose bachelor's degree, such as a degree in business administration, …" *Id* at 5. *See Royal Siam Corp.,* 484 F.3d at 147 (a "general-purpose" degree such as a degree in business administration is not a "specific" degree).

The AAO also rejected the plaintiff's attempt to meet the second criterion:

> "[that t]he degree requirement is common to the industry in parallel positions among similar organizations *or, in the alternative,* … that [the] particular position is so complex or unique that it can be performed only by an individual with a degree[.]" The first prong looks to the common industry practice, while the alternative prong narrows its focus to the Petitioner's specific position.

---

[7] In its decision, the AAO referred to this publication as the "Handbook." In caselaw, discussed *infra*, it is more often referred to as the "OOH."

7

It noted but rejected as insufficient the plaintiff's proffered evidence that the degree is common to the industry in parallel positions[8] or (b) that the duties of the position required a specific bachelor's degree.

The plaintiff submitted a large number of vacancy advertisements relative to other employers to demonstrate both that parallel positions and the industry generally require a specific degree. The AAO rejected that evidence, claiming it pertained to *dis*similar positions, inadequately described positions, insufficiently complex duties, and generally a lack of correlation between the tasks described and the twin criteria of body of highly specialized knowledge and a specific degree. (ECF No. 14-1 at 9-10.)

## Analysis

*Royal Siam Corp. v. Chertoff,* 484 F.3d 139 (1st Cir. 2007), upholding the denial of an H-1B visa, is the leading decision in this Circuit. It is amply distinguishable, however, because the position at issue there bears only a surface similarity to the position at issue here; because the degree in business administration, which was held not to be a "specific degree" is a far different one from the degree required here; and, significantly, because USCIS's failure to follow its own precedent was explained in that case and remains a mystery here.

---

[8] The second prong of this second criterion, that the job is so complex it requires a specific degree, was not claimed here. (ECF No. 14-1 AR 9.) The third criterion, that the petitioning employer typically requires a specific bachelors, is not relevant here as this was a new position. *Id.*

8

In *Royal Siam,* the Court upheld as reasonable the USCIS characterization of a position as a "food service manager," and its resultant determination that, so described, it was not a "specialty occupation." 484 F.3d at 146. The India House position under scrutiny here is much broader and requires a concomitantly expanded base of knowledge. It appears to be the Chief Operating Officer of a multi-faceted restaurant group that includes a catering service as well as four restaurants. Rather than simply managing a single restaurant's supplies and employees, this position requires deep knowledge of food and Indian cuisine, technology related to sales and marketing, knowledge of equipment and maintenance methods, as well a financial component of projecting costs and equipment needs, developing waste-saving methodology and strategies, and developing revenue-producing and marketing strategies. The position also includes personnel responsibilities common to that of any entity's high up manager such as interviewing, hiring and training employees, establishing performance standards and conducting reviews and evaluations, and supervising and, when appropriate, terminating employees. Moreover, the position requires development of policies for both operations and employees, presumably across the entire enterprise, not simply a single restaurant. (ECF No. 14-1 AR 157-59.)

The AAO opinion failed to take account of the broader and more knowledge-based duties of the position as compared to those of a food services manager. While there are few reported court decisions addressing the position of manager of a multi-faceted food services operation as this is, AAO conclusions against "specialty

occupations" have been reversed with respect to similar enterprise-managing occupations. In *Chung Song Ja Corp. v. USCIS,* 96 F. Supp.3d 1191, 1198 (W.D. Wash. 2015), reversing an AAU decision and granting summary judgment to the employer, a health care manager was held to be a specialized occupation where the duties were to manage administration of patients and records, develop procedures, evaluate personnel, set work schedules, produce reports and budgets, oversee billing and planning, and monitor equipment and patient flow.[9] And, in a very related field, hotel management was held to be a specialty occupation. *Matter of Sun,* A-11744231, 1966 WL 14402 at 535-36 (U.S. DOJ App., Dec. 16, 1966). There, as here, the visa applicant held a Bachelor of Science with a major in hotel management, including food preparation and food and beverage control. *Id.* The description of the position was very similar to that here, albeit it for a hotel group rather than a food services group:

> [Hotel manager] manages a hotel to insure efficient and profitable operation, establishes standards in matters concerning personnel administration and performance, service to patrons, room rates, and type of patronage to be solicited. He allocates funds, authorizes expenditures, and assists in planning budgets for departments. He delegates authority and assigns responsibility to department heads. In small hotels, he processes reservations and adjusts guests' complaints.

*Id.* (granting summary judgment to the petitioner).

The breadth and expertise required for this position is informed by the size of the enterprise, which was misconceived. The USCIS denial mistakenly described

---

[9] Indeed, if one substituted "health" for "operations," the position here would seem much like that in *Chung Song Ja Corp* but in the arena of food.

10

India House as a "restaurant started in 1987" and a business having 35 employees. (ECF 14-1 AR 25), and nothing in the AOO affirmance corrects that description. The USCIS description substantially understated the nature of the entity. With four restaurants as well as a catering business, India House is a $5 million business, employing sixty (60) employees, thirty-five (35) of whom are full time. (A.R. 110.) While the size of the business is not necessarily a determinative factor in whether its functional chief operating officer is a "specialty occupation," it is relevant. It only stands to reason that an endeavor with multiple revenue streams bringing in multi-millions of dollars, composed of five separate operations, requires financial, marketing, budgeting, and prognostication skills more profound than those needed to run, for example, a small family restaurant.[10] Mr. Shanbagh would be supervising, overseeing and generally being responsible for others carrying out a job that, just four years ago, was considered by USCIS as sufficiently specialized to meet the qualifications for an H-1B visa. The Operations Manager is described as needing to apply to an exponentially expanded endeavor all the specialized knowledge required in the previous role.

The second way in which this case differs from *Royal Siam* is in the degree required *and* the documented evidence of it. The only evidence submitted on the

---

[10] *See 2233 Paradise Road, LLC v. Cissna,* Case No. 17-cf-01018-APG-VCF, 2018 WL 3312967 at *5 (D. Nev. July 3, 2018) (while small size of business, with an annual payroll of $300,000, did not disqualify the position of Chief Operating Officer from being a specialty occupation, size was relevant to an evaluation of the nature of duties for the position); *Young China Daily v. Chappell,* 742 F. Supp. 552, 554 (N.D. Cal. 1989) (newly-created graphic designer position a specialty job in spite of small size of the newspaper).

issue of degree in *Royal Siam* was a one-paragraph statement from a single restaurant asserting that it expected applicants to have a degree in business administration. The primary holding of *Royal Siam* focuses on this point; it concluded that a business administration degree is a "general-purpose" degree, not a specific degree as required by § 1184(1)(B). *Royal Siam's* holding vis-à-vis a business administration degree has been applied both within and outside of the First Circuit. *See Parzenn Partners v. Baran,* No. 19-cv-11515-ADB, 2019 WL 6130678 at *4 (D. Mass., Nov. 19, 2019) (holding that M.B.A. is a general-purpose degree); *2233 Paradise Road, LLC v. Cissna,* Case No. 17-cf-01018-APG-VCF, 2018 WL 3312967 at * 3 (D. Nev. July 3, 2018) (same); *Shanti v. Reno*, 36 F. Supp.2d 1151, 1165 (D. Minn. 1999) (upholding INS conclusion that restaurant manager is not a specialty occupation and a bachelor's in business administration is not a specific degree).

Here the defendants maintain that the plaintiff failed to produce enough evidence to demonstrate that the field required a specific degree, or that a degree is normally required for entry into the field. The plaintiffs demonstrated that this position required at a minimum a bachelor's degree in Hospitality Management or a directly related field. (Declaration of Sanjiv Dhar, President of India House, and exhibits, ECF No. 14-1 AR 306-314.) *Compare Shanti v. Reno,* 36 F. Supp.2d at 1151, 1156 (D. Minn. 1999) (upholding finding that degree a preference, not a requirement, and while a bachelor's degree was considered desirable, it was not necessary). The AAO failed to recognize that Hospitality Management is a specific

12

degree, unlike business administration. Mr. Shanbhag's curriculum was designated "hospitality management" within the Hospitality College. (ECF No. 14-1 at 282). His diploma was a Bachelor of Science in Hospitality Management. (ECF No. 14-1 at 281). A degree in business administration can be equally applied to a position in finance, to any kind of institutional management, in retail or wholesale business, to running a nursing home or a chain of automobile dealers, or to myriad other endeavors. A Hospitality Management degree, however, as evidenced by the curriculum the plaintiff followed in his four terms at JWU,[11] is specific to management in the particular industry of food service and hotels. (ECF No. 14-1 AR 282.) There are not even a handful of liberal arts courses in that curriculum: instead, the coursework focuses on food, food safety, food service, food culture, and franchising, .Most telling, while the government is not bound by its granting of an H-1B visa in the past, it is significant that India House (and Mr. Shanbagh) had been twice approved for H-1B employment in a specialty occupation. The parties both agree that neither the law, nor regulations, nor guidelines have changed since Mr. Shanbagh's position as restaurant manager was considered a "specialty occupation" and his very same degree in Hospitality Management was considered a "specific degree." He could not have been granted the H-1B visa had the agency not judged at that time that his Hospitality Management degree was, in fact, a "specific degree" required for employment in the specialty occupation of restaurant manager.

---

[11] He transferred credits from the University of Mumbai where he pursued a similar course of study. (ECF Nos. 14-1 AR 128,129.)

In *Royal Siam Corp.,* the government confronted a similar situation but admitted that its previous issuance of an H-1B visa to the same employer for the same job had been "plainly erroneous." 484 F.2d at 141. Indeed, the agency had "carefully laid out the reasoning that underpinned its repudiation of the [earlier determination]." *Id. at* 144. In this case, there is no such repudiation or explanation. At oral argument on the cross-motions for summary judgment, the government said it did not believe its earlier issuance (twice) of a visa to India House for Mr. Shanbagh was in error; it merely responded that that was a different time, a different (lesser) position. While inconsistency itself by the agency does not itself necessarily invalidate or cast doubt on the ultimate decision, it lends credence to the assertion that the denial of the visa now is at odds with the evidence submitted. *See, e.g., Louisiana Philharmonic Orchestra v. INS,* 44 F. Supp.2d 800, 803-04 (E.D. La. 1999) (where INS gave H-1B visas to three previous musicians employed by the same employer, but then ruled that a violinist was not a "specialty occupation," its failure to explain the inconsistency rendered the decision an abuse of discretion). One court has suggested that the failure to explain a departure from previous precedent – or to acknowledge it as "erroneous" – deprives the agency of the deference it ordinarily deserves. *Tapis International v. Immigr. and Naturalization Serv.,* 94 F. Supp.2d 172, 177 (D. Mass. 2000) (plaintiff awarded H-1B visa as a "showroom manager," then denied renewal). The government here offers no reason to explain how a Hospitality Management degree can be a "specific degree" one day, and not a "specific degree" the next. In the absence of such an

14

explanation, and because it appears plain that this degree is, indeed, specific to the duties that one with specialized knowledge in the restaurant business would have, the agency's denial of that status is arbitrary and capricious.

Finally, the government maintains that even if the degree is specific enough, there is insufficient evidence that the position – or the field – requires it. The AAO noted that postings expressing a "preference" for a degree in hospitality management does not "necessarily" express a requirement. (ECF 14-1, AR 9.) While that is true in a vacuum, 8 U.S.C. § 1184(i)(1)(B) allows the requirement to be the degree "or its equivalent," and the AAO's view reads that language out of the statute. The "equivalent" of a bachelor's degree in a specific specialty would be a general bachelor's degree *plus* work experience in the specialty. A significant number of submitted postings required exactly that: either a specific hospitality management degree or a general bachelor's degree *plus* experience in hospitality. (ECF 14-1, at 172-192.)[12] The AAO faulted the plaintiffs for not giving sufficiently detailed information about the entities posting those positions; the plaintiffs, failed, for example, to produce the "scope of operations, as well as the level of revenue and staffing." *Id.* at 9. It is unreasonable to demand that the plaintiffs undertake an

---

[12] Seminole Hard Rock Hotel and Casino (degree in hospitality, business or related field *plus* two years' experience as restaurant manager); Courtyard Providence General Manager ("4-year degree, preferably in hospitality or hotel management" *plus* 3 years' experience in field); Aramark Catering & Premium Service Senior Manager (bachelor's preferred *plus* 5+ years' experience in hospitality management); Barton G General Manager (B.S. in hotel/restaurant management *plus* 10 years' experience); Sodexo General Manager at nursing home (bachelor's *plus* 5 years' "functional experience"); Siena Restaurant Group General Manager (bachelor's *plus* at least two years' experience)

in-depth analysis of the business entities advertising for similar positions: it is enough to show that they do. The similarity of the positions is evident on their face and in the descriptions contained in the advertisements.

## Conclusion

What was posed at the outset of this Memorandum as a single question ("is [this position] a specialized occupation for which a 'specific' degree is required either by custom in the field or because of the complexities of the job?") is actually a combination of several subsidiary questions: is a certain degree required at all by custom or because of the nature of the work? if so, is it a "specific" degree? if so, does the degree correlate sufficiently with the job such that the job can be termed a "specialty occupation?" Clearly, a B.S. in Hospitality Management is a specific degree, both as a matter of logic and by recourse to the curriculum it entails. It was awarded to Shanbhag after successful completion of a set of courses that are not useful to any profession outside food services and hospitality management. Second, the coursework is directly relevant to the job description. And third, the very fact that there *is* a bachelor's level curriculum dedicated to hospitality management, focused on food services, is indicative of it being a specialty occupation. It is "a body of highly specialized knowledge" and the degree program is the embodiment of "[its] theoretical and practical application." 8 U.S.C. §1184(1)(A). The degree exists *because* a focused curriculum is preparation for the specialty career.

I find the decision of the AAO to be contrary to the evidence, too narrowly interpretive of § 1184's requirements and, in its failure to demand either a disavowal

or an explanation from USCIS of its previous inconsistent ruling, arbitrary and capricious. I therefore DENY the defendants' motion for summary judgment and GRANT summary judgment in favor of the plaintiffs, directing the following relief: the USCIS shall grant the petition of India House and issue forthwith a visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(i)(b) to Santosh Shanbhag and an H-4 visa to Meenal V. Shanbhag. The USCIS shall also ensure that no overstay days accrue to either Ms. or Mr. Shanbhag as a result of the initial denials of those visas.

Mary S. McElroy, United States District Judge.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

3/26/2020

17